## THE ADVANCE.

## THE ALLIANCA.

## THE SEGURANCA.

## THE VIGILANCIA.

### HIGGINS et al. v. ATLANTIC TRUST CO.

(Circuit Court of Appeals, Second Circuit. April 16, 1895.)

MARITIME LIENS—INSURANCE PREMIUMS—STATE LAWS—SUBROGATION.

Certain New York insurance brokers procured from English insurers, through English brokers, policies upon ships owned by an American steamship company. The company having failed to pay the premiums, the New York brokers were allowed to retain the policies, and finally, after the premiums were many months overdue, to cancel and surrender them. They thereupon, from their own funds, remitted the premiums due, to the London brokers, and within 30 days thereafter filed specifications of lien under the New York statute, which gives a lien upon vessels for certain debts, including insurance premiums, contracted within the state, provided that specifications of lien be filed within 30 days after the debt is contracted. Laws 1862, c. 482, as amended by Laws 1886, c. 88. *Held,* that the New York brokers obtained no lien, for, if they made the payment by request of the steamship company, it was merely a loan to that company, which was not brought within the statute by the fact that it was for the purpose of paying a debt for insurance premiums; and if, on the other hand, the New York brokers were sureties for the steamship company, their payment of the premiums would merely subrogate them to the rights of the English brokers, who had no lien whatever. 61 Fed. 507, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by A. Foster Higgins, William Krebs, John D. Barrett, John H. Gourlie, James B. Dickson, and Stephen Loines against the steamships Advance, Alliança, Seguranca, and Vigilan-

cia, the Atlantic Trust Company, trustee, claimant, to enforce an alleged lien under the New York statute. Laws 1862, c. 482, as amended by Laws 1886, c. 88. The circuit court dismissed the libel. 61 Fed. 507. Libelants appealed.

Robert D. Benedict (H. Putnam, of counsel), for appellants.
Carter & Ledyard, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is one of four causes in which the question is whether the libelants acquired a lien against certain vessels belonging to the United States & Brazil Mail Steamship Company. They were heard together in the district court, the evidence in one being treated as the evidence in the others, and the respective libels were dismissed. The appeals from the decrees dismissing the libels have been argued together in this court, and the four causes may be conveniently considered as one for the purpose of disposing of the questions presented.

The lien claimed by the libelants is founded upon the New York statute "for the collection of demands against ships and vessels" (Laws 1862, c. 482, as amended by Laws 1886, c. 88), which, among other things, provides that whenever a debt amounting to $50 or upwards shall be contracted by the owner "on account of the insurance or premiums of insurance of or on" the vessel, such debt shall be a lien upon the vessel; but in all cases such debt shall cease to be a lien upon the vessel unless the person having the lien shall within "thirty days after the said debt is contracted" cause a specification of such lien to be filed, duly verified, in the clerk's office of the county in which the debt has been contracted. The libelants, insurance brokers at New York City, had procured through Tyson & Co., insurance brokers in London, previous to the fall of 1892, several policies of insurance for the steamship company covering risks upon its vessels, upon which, at the time the policies were obtained, premiums became due and payable from the steamship company, either to Tyson & Co., or to the libelants, aggregating a large debt. The steamship company was dilatory in paying the premiums, and allowed the libelants to retain the policies, in order that if a loss happened within the policies the insurance could be collected, and the premiums deducted therefrom, and also in order that the libelants, if they saw fit, might at any time cancel and surrender the policies, in which event a considerable sum for uncarned premiums would be restored by the underwriters. In February, 1893, after unsuccessful efforts to obtain payment of the premiums from the steamship company, the libelants canceled the policies, and remitted to Tyson & Co. the amount of the premiums, less that of the unearned premiums. Within 30 days thereafter, the libelants filed specifications of lien against several of the vessels of the steamship company insured by the policies, among them one against the Advance. Inasmuch as the debt for the insurance was contracted several months before the filing of the specifications of lien, instead of within 30 days, the theory that the lien survived seems to be so

destitute of any color of merit as hardly to justify discussion. In deference, however, to the argument of the learned counsel for the libelants, we will consider his contention. It is insisted (1) that the payment made by them to Tyson & Co. in February, 1893, was made at the request of the steamship company, and their debt accrued at that time; and (2) that the libelants were sureties for the payment of the company's debt to Tyson & Co., and the payment was made by them in discharge of their obligation as sureties; and it is argued that in either event the case for the libelants is within the statute. It is sufficient to dispose of the first contention that the evidence does not establish that the payment was made at the request of the steamship company. The facts were, the libelants made it because Tyson & Co. considered them personally liable for the premiums, either primarily or as guarantors. They were apprehensive that they might have to respond, and they hoped by making the payment to recover it by enforcing a lien against the vessels for the amount. The circumstances of the company were so desperate that it could no longer carry the insurance, and the only resource of the libelants was to save what they could out of the debt owing by the company to them, or to Tyson & Co., by canceling the policies and obtaining the unearned premiums. But if the money was paid for the steamship company, at its request, to Tyson & Co., the libelants not being liable to Tyson & Co. themselves, the debt for insurance was not contracted then. It had existed for months, and the only debt which accrued to the libelants was one for money loaned. It certainly was not the intention of the statute to give a lien for money advanced to a vessel owner to pay his debts months overdue, even if the debts were originally contracted for insurance. Such a construction would put it in his power to revive at any time against other lienors a secret lien, which has become defunct by lapse of time, and give it priority over their claims. If the libelants stood in the relation of sureties for the steamship company, their payment to Tyson & Co. would merely subrogate them to the rights of the latter. They could obtain no better right to enforce the debt then belonging to Tyson & Co. It is the object of the statute, by requiring a public registration of the claims against vessels, to discountenance the existence of secret liens beyond 30 days. That would be wholly defeated if the vessel owner, or other parties interested, could revive defunct liens by new promises to pay old debts, or the substitution of new obligations in their place. The district court properly dismissed the libel, and the decree is affirmed, with costs.